UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. |
| | : | |
| v. | : | Crim. No. 20- |
| | : | |
| | : | 18 U.S.C. §§ 371 & 981(a)(1)(C), and |
| GICELLA SANCHEZ | : | 28 U.S.C. § 2461 |

**INFORMATION**

The defendant having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey charges:

1. At all times relevant to this Information:

    A. Defendant GICELLA SANCHEZ was a police officer in Jersey City.

    B. The Jersey City Police Department was a department of Jersey City. Jersey City received benefits in excess of $10,000 in each of the fiscal years 2014, 2015 and 2016 under federal programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of federal assistance, within the meaning of Title 18, United States Code, Sections 666(b) and 666(d)(5).

    C. Jersey City had a policy regarding the use of off-duty police officers for off-duty employment. The terms of that policy were set forth in Section 3-85.1 of the Jersey City Municipal Code.

    D. Certain private contractors and utility companies ("vendors") sometimes were required to utilize the services of off-duty Jersey City police officers. Generally, when vendors needed to perform work in Jersey City that could obstruct the flow of vehicular or pedestrian traffic, they had to obtain a traffic permit from the Jersey City Department of Business

Administration, Division of Traffic Engineering. That permit directed the applicant to call the "pick coordinator" for the relevant district within the Jersey City Police Department, who would then designate an off-duty police officer for the assignment.

E. Jersey City relied on a voucher system in order to process payments for police officers who performed off-duty assignments. The police officer who performed the off-duty assignment was required to complete the top portion of the voucher and include the following information: the officer's name, rank, social security number, total hours worked, date and times that the off-duty employment was performed, and the officer's signature. A representative of the vendor was required to fill out the middle portion of the voucher and provide the following: the name and location of the worksite and the name and signature of the vendor's foreman or authorized agent.

F. Generally, after filling out the top portion of the voucher and having the vendor complete the middle portion, the police officer who performed the off-duty work provided the voucher to the pick coordinator or assistant pick coordinator. The pick coordinator or assistant pick coordinator then completed his portion of the voucher and caused the voucher to be delivered to the Office of Off-Duty Employment at the Jersey City Police Department. A completed voucher indicated that the officer who had filled out the top portion of the voucher had performed an off-duty job for the vendor whose representative had filled out and signed the middle portion of the voucher. The City of Jersey City recorded the transaction, collected certain fees for Jersey City, withheld all appropriate taxes, and paid the police officer who performed the off-duty work.

G. Co-Conspirator 1 ("CC-1") was a police officer in Jersey City's West District who also was the "assistant pick coordinator" for the West District. In this capacity, CC-

1's duties and responsibilities included assigning off-duty police officers to projects requiring such officers in the West District.

## THE CONSPIRACY

2. From in or about November 2014 to in or about June 2016, in Hudson County, in the District of New Jersey and elsewhere, defendant

GICELLA SANCHEZ

did knowingly and intentionally conspire with CC-1, to embezzle, steal, obtain by fraud, misapply, and without authority knowingly convert to the use of other persons other than the rightful owner, $5,000 and more in money owned by, and under the care, custody and control of the City of Jersey City and its police department, contrary to Title 18, United States Code, Section 666(a)(1)(A), in violation of Title 18, United States Code, Section 371.

3. The object of the conspiracy was for SANCHEZ to obtain payments from Jersey City by submitting false and fraudulent vouchers to Jersey City for off-duty work that that she did not in fact perform, in whole or in part.

4. It was part of the conspiracy that on many occasions SANCHEZ did not show up at all for off-duty work assignments, while on other occasions SANCHEZ showed up to the job-sites for a period of time, but left hours before her shift ended.

5. For instance, on or about the dates and times set forth in the chart below, evidence obtained from SANCHEZ'S mobile telephone, including text messages (set forth verbatim), photographs, a video, and geolocation information reflect that, in many instances, SANCHEZ either never showed up to certain off-duty jobs at all or left early, but still fraudulently sought and received compensation for the hours reflected on the vouchers:

| Date of Voucher | Hours Claimed Working | Evidence from SANCHEZ's Mobile Phone |
|---|---|---|
| December 15, 2014 | 4:00 p.m. to 9:00 p.m. | At 6:30 p.m., SANCHEZ texted Individual-1: "This detail only pays 35 an hour. So I have this steal s couple of hours to make it worth it." |
| January 13, 2015 | 3:00 p.m. to 8:00 p.m. | Between 4:42 p.m. and 4:50 p.m., SANCHEZ texted Individual-1: "I was trying to leave now but working with an older lady and she goody two shoes. Let's see if I convince her to leave earlier." |
| April 6, 2015 | 4:00 p.m. to 9:00 p.m. | At 1:54 p.m., SANCHEZ texted Individual-1: "Leaving here around 230ish. Need an address to get down to the park he plays at." In response to a text from Individual-1 stating "56 Harter Rd Morristown NJ," SANCHEZ replied: "ok," and at 2:33 p.m. typed that same address into the Waze app on SANCHEZ'S mobile telephone. |
| April 20, 2015 | 3:00 p.m. to 7:00 p.m. | At 6:10 p.m., SANCHEZ's cellular telephone was used to take a photograph of SANCHEZ and a relative at a restaurant. |
| June 26, 2015 | 3:00 p.m. to 7:00 p.m. | At 5:17 p.m., SANCHEZ's mobile telephone was used to record a video of a relative. |
| October 29, 2015 | 4:00 p.m. to 8:00 p.m. | On October 29, 2015, between 7:15 p.m. and 7:16 p.m., Sanchez texted Individual-1: "Yeah, I didn't get a job today . . . [s]o I made [CC-1] give me a no-show one." |

6.  It was a further part of the conspiracy that on multiple occasions, with SANCHEZ's knowledge and consent, CC-1 falsely represented on the top portion of vouchers that SANCHEZ had performed an off-duty job during the hours reflected on the vouchers for the vendors whose representative had signed the middle portion of the vouchers. CC-1 also signed SANCHEZ's name on the vouchers, purporting to be defendant SANCHEZ's signature. With SANCHEZ's knowledge and consent, CC-1 then submitted the false and fraudulent vouchers to the Jersey City Office of Off-Duty Employment. As a result, SANCHEZ knowingly accepted money for off-duty work that she did not perform, including, but not limited to, well more than $5,000 between on or about April 29, 2015 and on or about April 28, 2016.

## Overt Acts

7. In furtherance of the conspiracy and to effect the object thereof, SANCHEZ and CC-1 committed and caused to be committed the following overt acts, among others, in the District of New Jersey and elsewhere:

A. On or about December 10, 2015:

| | |
|---|---|
| 1 | SANCHEZ texted CC-1 a photograph of a blank voucher and asked CC-1: "This what's at my desk. Is it for me." |
| 2 | CC-1 responded: "Yes," and informed SANCHEZ of the vendor for whom the off-duty job was supposed to be performed and the intersection where the off-duty job was supposed to be performed. |
| 3 | SANCHEZ responded: "what date." |
| 4 | CC-1 replied: "1600 to 2000. Last Friday." |
| 5 | With SANCHEZ'S knowledge and consent, CC-1 falsely represented on a voucher submitted to Jersey City that SANCHEZ completed four hours of off-duty work between 4:00 p.m. and 8:00 p.m. on December 4, 2015. |

B. On or about February 26, 2016:

| | |
|---|---|
| 1 | SANCHEZ texted CC-1: "where you able to get something," |
| 2 | CC-1 responded: "U got paper." |
| 3 | SANCHEZ replied: "ok cool." |
| 4 | CC-1 asked SANCHEZ: "last 4 of s.s." |
| 5 | SANCHEZ responded with her social security number and badge number. |
| 6 | CC-1 texted: "okay I'll fill it out and get you the blue copy." |
| 7 | SANCHEZ responded: "Nice thank you." |
| 8 | With SANCHEZ's knowledge and consent, CC-1 falsely represented on a voucher submitted to Jersey City that SANCHEZ completed four hours of off-duty work on February 25, 2015. |

      C.      With SANCHEZ's knowledge and consent, CC-1 falsely represented on a voucher submitted to Jersey City that SANCHEZ had performed an off-duty assignment on or about March 8, 2016 in the vicinity of St. Paul's Avenue in Jersey City between 3:00 p.m. and 7:00 p.m.

In violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION

1. The allegations contained in this Information are hereby realleged and incorporated by reference for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461(c).

2. Upon conviction of the offense of conspiracy to commit fraud, contrary to Title 18, United States Code, Section 666(a)(1)(A), in violation of Title 18, United States Code, Section 371, as charged in this Information, defendant

GICELLA SANCHEZ

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real or personal, that constituted and was derived from proceeds traceable to the commission of the above violation, and all property traceable thereto, including, but not limited to, a sum of money equal to $9,059 in United States currency, representing proceeds of the offense charged in this Information, as agreed to by the parties under the terms of a plea agreement dated March 2, 2020.

3. If by any act or omission of SANCHEZ, any of the property subject to forfeiture described in paragraph 2 herein:

      a) cannot be located upon the exercise of due diligence;

      b) has been transferred or sold to, or deposited with, a third party;

      c) has been placed beyond the jurisdiction of the court;

      d) has been substantially diminished in value; or

      e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of SANCHEZ up to the value of the above forfeitable property.

                                                           CRAIG CARPENITO
                                                           UNITED STATES ATTORNEY

CASE NUMBER: 20-

# United States District Court
# District of New Jersey

UNITED STATES OF AMERICA

v.

GICELLA SANCHEZ

# INFORMATION FOR

18 U.S.C. §§ 371 and 981(a)(1)(C);
28 U.S.C. § 2461

## CRAIG CARPENITO
*UNITED STATES ATTORNEY*
*NEWARK, NEW JERSEY*

Sean Farrell
*ASSISTANT U.S. ATTORNEY*
*973-645-6112*